ISABEL DOBBIN NAAME, complainant-appellant,

*v.*

SOMERS L. DOUGHTY and DAVID H. BEST, defendants-respondents.

[Submitted May 25th, 1931.   Decided February 1st, 1932.]

*Mr. Paul M. Salsburg* and *Mr. Merritt Lane,* for the complainant-appellant.

*Mr. John C. Reed* and *Mr. Emerson L. Richards,* for the defendants-respondents.

The opinion of the court was delivered by

WELLS, J.

This is an appeal from a decree of the court of chancery dismissing a bill of complaint filed by the appellant, Isabel Dobbin Naame, to set aside a deed given by the respondent Somers L. Doughty to the respondent David H. Best, conveying a property on the northwest corner of Drexel and Maryland avenues, Atlantic City, and to cancel of record a mortgage of $35,000, given back by said Best to Doughty on said premises, and to declare the complainant-appellant to be the unqualified owner of said premises by virtue of a prior deed from said Doughty to her; and that complainant may have such other relief as the circumstances of the case may render appropriate, just and equitable.

The decree appealed from not only dismisses the bill of complaint, but adjudges that the respondent Doughty have leave to file a copy of the decree with the county clerk, and that the county clerk shall thereupon cancel the record of the prior deed made by said Somers L. Doughty to said Isabel Dobbin Naame.

The respondent Doughty was the stepfather of the appellant, Isabel Dobbin Naame, and they lived together for many years and up to the day of her marriage, February 6th, 1929, she had been the recipient of many gifts of money, lands and other favors from him. Up until about Thanksgiving, 1928, their relationship was very close and cordial; he treated her as if she were his own daughter, and she regarded him as a father. Something occurred in the fall of 1928 which disturbed this cordial relationship; he claiming that her refusal to abide by their mutual agreements as regards other properties he had given her was the cause, and she attributing it to her contemplated marriage to her present husband, Joseph A. Naame, and she claiming that as a result, he made life most unpleasant for her, and among other things, that he

instituted suits in the court of chancery (the papers of which were served upon her on her wedding day) to recoup so far as possible all the gifts he had previously bestowed upon her.

It is conceded that on December 31st, 1926, the respondent Somers L. Doughty signed and duly acknowledged a deed conveying the premises in question to his stepdaughter, the appellant, and that this deed came to the possession of the stepdaughter, the deed not being recorded, however, until January 29th, 1929; and that on January 5th, 1929, the respondent Doughty executed and delivered a deed for the same premises to respondent David H. Best for a stated consideration of $40,000, and that a purchase-money mortgage was taken back to secure $35,000 of the purchase price, which deed and mortgage were recorded January 7th, 1929.

The bill alleged that the transfer from Doughty to Best was not *bona fide*, but an arrangement between them to defeat the rights of the appellant under her deed.

The answer of respondent Doughty admitted the signing and acknowledgement of the deed to appellant, but denied that it was delivered to appellant and alleged that the sale to Best was *bona fide*.

The learned vice-chancellor, before whom the case was tried, found that while at one time the respondent Doughty intended to make a gift of this property to his stepdaughter, the appellant, yet the contemplated gift was reconsidered and instead of destroying the deed, which had already been prepared and executed (but not delivered), it was placed in a desk or other receptacle in his house, where it remained until the unhappy differences arose between stepfather and stepdaughter and that she took possession of the deed and caused it to be recorded.

"On appeal from a decree of the court of chancery, great weight is given to a finding upon a question of fact, because the chancellor, who hears the case in the court below and sees the witnesses and hears them testify, has better opportunities to judge their credibility than the reviewing court. But that rule imposes no restraint on the power of the reviewing court to ascertain, by full investigation and analysis

of the evidence, what the facts are, and whether the general finding is consistent therewith." *Carlan* v. *Phelps, 91 N. J. Eq. 312.*

After such an investigation and analysis, we have reached the conclusion that the evidence in the case *sub judice* does not justify the findings of the learned vice-chancellor.

There are two questions involved:

(1) Whether the deed executed and acknowledged by Doughty December 31st, 1926, was delivered to the appellant?

(2) Was Best a *bona fide* purchaser of the premises in question for value without notice?

Let us consider these questions in their order.

As to the *first question:* Was the deed delivered?

The respondent Doughty undertook to prove that he had intended and promised to give his daughter the lot in question, provided she would build an apartment house on it, that he had a deed prepared which he executed and acknowledged, but which he says he did not deliver to his stepdaughter, because after talking the matter over with her, it was decided to build the apartment house on a lot on Ohio avenue which he gave her, and that this gift was in lieu of the contemplated one; and that after leaving the deed for the property in question in the office of C. J. Adams Company, real estate agents, for about two months, he took it home and locked it in his bureau drawer in his bedroom, and that the appellant extracted it therefrom without his knowledge or consent and had it recorded; that he did not miss the deed until about December, 1928, which was about the time he claims he began negotiations with Best to sell him the property, and that he asked his daughter if she had the deed and she made no reply; that the deal was actually closed January 5th, 1929, by Best paying Doughty $5,000 down and giving him a mortgage for $35,000, which was reduced on February 4th, 1929, by another payment of $5,000.

The respondent's proof consisted for the most part of his own testimony and that of two colored servants, one of whom was a former janitor of appellant's apartment house, and who said that the appellant had told him in June or July, 1928,

that her father (Doughty) had bought the Ohio apartment, and she didn't guess he would let her have the property in question, and that her father had not given the property to her yet, but she would get it out of him. When asked when this was, he said June or July, 1917, 1918, 1928. He said he was subpœnæd to come from New York to testify and had never told anyone about this conversation with appellant until he told it on the witness stand. The other was a discharged colored maid by whose testimony it was sought to show that appellant had a key that would fit the bureau drawer in which Doughty claimed he deposited the deed, and that appellant had in her possession a letter implicating Doughty in some questionable transaction and had given this maid gold pieces, which letter and gold pieces Doughty said were locked up in this drawer. This, Doughty claims, goes to corroborate his claim that appellant deliberately entered his bureau drawer and removed this deed therefrom.

A careful reading of the testimony of this maid will disclose that her testimony is full of contradictions, tainted with an animus against appellant and unbelieveable.

The story of the appellant is that sometime before the deed was executed, her stepfather had told her that if he succeeded in winning a law suit then pending over the lot, he would give the lot to her, and that within a short time after he won the suit, he brought her the deed in question and said: "Here's the deed of the property I gave you;" that she placed it in her bureau drawer and a month or two after that, placed it in her box at the Atlantic Safe Deposit and Trust Company, where it remained from January, 1927, until she removed it January 29th, 1929, to have it recorded.

The recording was brought about by her hearing about the middle of January, 1929, that her stepfather had conveyed the property to Best, whereupon she told a friend of hers in the trust company about the report, and he advised her to immediately record her deed. She had very little business experience and did not know the importance of the recording of a deed.

The possession of this deed by appellant in January or February, 1927, is corroborated by Miss Edith Crouch, a friend of the family, who at or about that time went to the bank with appellant to deposit the deed in the vault. Miss Crouch had also heard the stepfather say on one or more occasions that he had given the appellant the property.

The husband of appellant, corroborates the transaction to the extent that he says Doughty told him that in case he won the lawsuit over the lot in question, he was going to give it to his daughter, and later Doughty told him he had won the case and had given the lot to his daughter.

There are other corroborating circumstances—one of which is that in March, 1927, a lease on this lot was negotiated by Doughty with one Headley, and this lease was prepared by the C. J. Adams Company, the same real estate agents, who, at Doughty's instigation had prepared the deed from Doughty to appellant, and this lease was between Isabel Dobbin (the appellant), lessor, and Headley, lessee. Doughty undertakes to explain that he did not order the agents to draw up the lease in appellant's name, and that it was a mistake on their part. No one, however, from the real estate agents' office was called to corroborate him in this.

The significant fact is that not only was the lease drawn in the name of Isabel Dobbin, but the rent checks were made payable to her and she got and used the rents.

Doughty admits that he knew that the lease was in his step-daughter's name, that he had a copy of it and that she had a copy. He knew that the checks were payable to her and that she cashed them and used them (with one exception) for her own purposes. He made no protests, did nothing about it until after trouble arose between them two years or more later, and then without a word of explanation to her, gave a deed for the property to Best.

Headley, on March 11th, 1929, after process had been served upon appellant in this suit, returned this lease to Doughty and while he preserved the letter in which the lease was mailed yet Doughty says that he could not find the lease; that it must either have been burned or torn up.

Of course, this lease wherein appellant is the lessor, prepared in the office of his own real estate agents, and after he himself had arranged the terms, &c., with the lessee, was damaging evidence to his side of the case, and may explain why it could not be found.

The question here is distinctly presented, whether a deed duly executed and acknowledged and in the possession of the grantee can be set aside as invalid upon the testimony presented in this case to establish non-delivery.

We have no hesitation in saying that it ought not to be done.

"The rule is well established that the fact of possession of a deed by the grantee, duly executed and acknowledged by the grantor is presumptive evidence of the delivery thereof at the date of the acknowledgment. The presumption is to be overcome by counter-evidence of superior weight." *Walkowitz* v. *Walkowitz, 95 N. J. Eq. 249; Benson* v. *Woolverton, 15 N. J. Eq. 158.*

We find no such convincing evidence in the case to overcome this presumption.

Our conclusion, therefore, as to the first question involved in this controversy, is that there was an actual delivery of the deed from the respondent Somers L. Doughty to the appellant, Isabel Dobbin Naame, for the property in dispute.

This leads us to the consideration of the *second question* as to whether Best was a *bona fide* purchaser for value without notice.

"The defense of a *bona fide* purchaser must be clearly and unequivocally set up in the answer, with the particulars of the purchase and must be distinctly proved." *Graves* v. *Coutant, 31 N. J. Eq. 763.*

The respondent Best did not file any answer or counterclaim, but Doughty in his answer set up the defense of a *bona fide* purchase on Best's part.

A careful examination of the evidence in this case fails to satisfy us of the *bona fides* of this transaction. The appellant said that Best knew the property was hers, and when asked how he knew it, she stated that she asked him on one oc-

casion why he didn't buy that property of hers at Maryland avenue.

If the *bona fides* of the transaction between Best and Doughty depended solely upon this notice, we might hesitate, in the face of Best's denial, to conclude that it was sufficiently established to warrant the setting aside of the conveyance.

There are many other incidents that shed light on this transaction and lead us to our conclusion. It will serve no useful purpose to set forth in detail all the facts and circumstances. The recital of a few will be sufficient.

While Best claims he became the owner of the property January 5th, 1929, yet Doughty paid the taxes for the year 1929; and in the summer of 1929, Doughty is negotiating with Headley, the former tenant, for the rental of the property for the months of July and August, 1929.

In July, 1929, Best claims he owed $900 interest on the mortgage, that he paid Doughty $450 in cash on account; that he took a receipt but he was not able to produce it and Doughty had no record of it. Best says that Doughty had possession of all of his money in June or July, 1929, he having given him about $6,000 to prevent a judgment creditor from attaching his money in the bank. Best told conflicting stories as to how he paid this $6,000 to Doughty.

First, he said it was in cash received in a month from his business, and second, that $1,600 of it was from a check and the balance in cash, and third, that he took the money out of the Marine Trust Company and turned it over to Doughty. Best said that Doughty paid him back the $6,000 or thereabouts by check on the Neptune Trust Company, which Best deposited in the Marine Trust Company. Best was called upon and promised to produce his deposit book in the Marine Trust Company showing this deposit, but did not do so. The checkbook of Doughty's in the Neptune Trust Company was offered and showed no such check drawn to Best. The promise of Doughty's counsel to produce the canceled check was not fulfilled.

The passage of the two $5,000 checks from Best to Doughty alleged to have been paid on account of the purchase price is

without much significance in the face of this extraordinary and conflicting testimony as to the financial relationship existing between Doughty and Best.

It may naturally be inferred that if Doughty was willing to co-operate with Best to defraud Best's creditor, Best would be equally willing to assist Doughty in regaining his property from his stepdaughter to whom he had given it.

It is significant that while Best felt it necessary to withdraw his money from the bank and turn over the daily receipts from his business to Doughty for his protection against the judgment creditor, yet he did not transfer his automobiles, building and loan stock and other properties to Doughty, and that with this judgment on record against him, he should have taken the title to the property in question in his own name.

In support of the *bona fides* of the transaction, an attorney was produced by the respondents to corroborate the statement of Best that he had a search made before he accepted a deed from Doughty. This so-called search was made the latter part of December, 1928, and was for deeds and mortgages only. Appellant's counsel insists with much justification that the purpose of this search was manifestly to ascertain whether the deed from Doughty to appellant had been placed on record. If so, the contemplated deed from Doughty to Best would not be executed and recorded. If not, it would be; and the fact that the search had been made, would make good evidence for the respondents. We are not impressed with this search. The attorney made no written memorandum of his search. He could recall no dates, nor how far back he had searched. It was evident that he had searched against Doughty only.

It is useless to further review the evidence. Our examination of the case constrains us to answer the second question presented for our determination as to whether Best was a *bona fide* purchaser for value without notice, in the negative.

We are of the opinion, therefore, that the decree of the court of chancery should be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, HETFIELD, DEAR, WELLS, JJ. 13.